COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Petty and Senior Judge Haley
Argued at Alexandria, Virginia

UNPUBLISHED

MAUREEN ANNE BLAKE

v.      Record No. 1751-12-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT P. FRANK
NOVEMBER 19, 2013

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

Alexis M. Downing, Assistant Public Defender (Office of the Public
Defender, on briefs), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Maureen Anne Blake, appellant, was convicted in a bench trial of three counts of failing

to send her three children to school, in violation of Code §§ 22.1-254 and 22.1-263. On appeal,

she contends the trial court erred in ruling that Code § 22.1-254 encompasses not only absences

from school but also tardiness, and in finding the evidence sufficient to convict. For the reasons

stated, we affirm the judgment of the trial court.

BACKGROUND

The facts in this case are not controverted. Appellant is the mother of three school-aged

children, ages 8, 10 and 11, all of whom were enrolled in public school. Lori Melcher, a

Loudoun County public school attendance officer, testified that during the relevant time period,

appellant was responsible for transporting the children to school on Thursday mornings.

Appellant, a divorcee, had visitation with the children on Wednesday nights and Thursdays. On

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

a number of Thursdays, the children arrived late to school. The length of the delay in arriving at school ranged from five minutes to twenty minutes. All the tardiness occurred at the beginning of the school day. The attendance officer characterized these tardy arrivals as unexcused,[1] i.e. no valid excuse, doctor's note, or other documentation. Any tardiness that occurred on days other than Thursday was properly explained and therefore excused. Appellant testified the children's father had no problem getting them to school on time.

From September 15, 2011, the beginning of the period stated in the warrant, the children were tardy on two of the three remaining Thursdays in that month. The children were late on two of the four Thursdays in October. In November, the children were tardy once out of three Thursdays (the other Thursday was Thanksgiving Day, when school was not in session). In December, the children were tardy on all three Thursdays that school was in session (the last two Thursdays were during the winter vacation). In January, through January 19, the end of the period charged in the warrant, the children were tardy twice out of three Thursdays. Thus, the children were tardy on ten of sixteen Thursdays, or 63% of the days that appellant took the children to school between September 15 and January 19.

We should note appellant never contested the number of tardies.[2] Some of the excuses proffered for being late were that appellant or one of the girls had overslept, that one of the girls had wanted to wear a particular item of clothing that she could not find, that appellant had to clean up spilled food, or that she misplaced her purse.

---

[1] Whether tardiness was excused or unexcused was determined by guidelines established by the school principal.

[2] The above dates were listed in a document before the court and the parties, but they were not introduced into evidence. The Commonwealth's attorney reviewed the dates in his closing arguments. Appellant never objected to this factual recitation.

Pursuant to school policy, Melcher sent appellant a letter on November 3, 2011, detailing appellant's duty to send the children to school on time. Melcher met with appellant in December of 2011, regarding appellant's daughters' tardiness. Appellant acknowledged her children had not come to school on time.

Appellant suffers from Attention Deficit Hyperactivity Disorder (hereafter "ADHD"),[3] as does one of her children. During the relevant period, another child was in the process of being tested and has since been diagnosed with ADHD. Appellant testified that on some of the occasions at issue, the children experienced ADHD behavioral manifestations. On those occasions, appellant chose to send the children to school late, as part of a parenting philosophy, in order to deal with "behavior incident[s]." The girls' ADHD manifests itself in lack of attentiveness, cooperation, defiant behavior, and emotional instability. Rather than send the children to school in a socially unacceptable state, appellant believed the children would be more productive at school if they were allowed to work through an "anger issue" beforehand. In other instances, the tardiness was due to appellant's inadvertence, such as losing her keys.

To address these issues, appellant and each of the children were taking medication prescribed by a psychiatrist, as well as participating in family and individual therapy. Appellant subsequently saw an improvement in the girls' behavior. In addition, appellant hired a driver[4] during November and December of 2011, so that she would not impact the children if she personally was not ready on time. Appellant also hired a life coach and began taking on additional responsibilities at work, including teaching a time management class to improve her "area of limitation."

---

[3] The children were not enrolled in, or eligible for, special education classes.

[4] Despite the hired driver, appellant acknowledged the children were still tardy.

Prior to the trial in circuit court, appellant filed a motion to dismiss,[5] contending Code § 22.1-254 mandates *enrollment* in school and does not address truancy. She maintained Code § 22.1-258 does not address tardiness. Further, appellant asserted Code § 22.1-254 is unconstitutionally vague because it fails to put a person of ordinary intelligence on notice that tardiness is prohibited criminal conduct. Appellant made this same argument at trial.

The trial court, in denying appellant's motion to dismiss, opined that Code § 22.1-254 "applies not only to absenteeism, but tardiness and early departures." The trial court relied, at least in part, on an Attorney General's opinion decided January 31, 2005 (Op. No. 04-090). The trial court also found no constitutional infirmity, indicating the statute is not facially invalid.

At the conclusion of all of the evidence, the trial court found appellant guilty of each offense that occurred after December 1, 2011.

Appellant was originally charged with three counts of contributing to the delinquency of a minor in violation of Code § 18.2-371. In juvenile court, the warrants were amended to violations of Code §§ 22.1-254 and 22.1-263, a Class 2 misdemeanor. On appeal to circuit court, the Commonwealth's attorney stated he was not clear whether the appealed charges were Class 2 or Class 3 misdemeanors. The trial court advised counsel that appellant would be tried for a Class 3 misdemeanor. Appellant's counsel agreed. Appellant was convicted of three violations of Code §§ 22.1-254 and 22.1-263.

This appeal follows.

---

[5] In that pleading, appellant indicated she was charged with a Class 3 misdemeanor.

ANALYSIS

On appeal, appellant maintains that Code § 22.1-254 only mandates the enrollment of a child in school and neither addresses nor prohibits tardiness.[6] She also challenges the sufficiency of the evidence, contending the evidence did not support a finding that she knowingly and willfully failed to have the children timely appear at school.

"In determining whether the trial court made an error of law, 'we review the trial court's statutory interpretations and legal conclusions *de novo*.'" Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) (quoting Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998)).

If there is ambiguity in the statutory language, we will apply established principles of statutory interpretation. See Va. Dep't of Labor & Industry v. Westmoreland Coal Co., 233 Va. 97, 101-02, 353 S.E.2d 758, 762 (1987). Consistent with those principles, we will interpret the statute so as "to promote the end for which it was enacted, if such an interpretation can reasonably be made from the language used." Mayhew v. Commonwealth, 20 Va. App. 484, 489, 458 S.E.2d 305, 307 (1995). Therefore, in construing the statute, we must consider "the

---

[6] Appellant also challenges the issue of notice, as well as the constitutionality of Code § 22.1-254, arguing that it is unconstitutionally vague. These arguments are waived, as appellant did not include them in her assignments of error.

Rule 5A:12(c)(1) requires an appellant's petition for appeal to "list clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely." Rule 5A:20(c) requires an appellant's opening brief to contain "[a] statement of the assignments of error with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Appellant did not include the issues of the notice and constitutionality in her petition for appeal and necessarily could not include them in her opening brief. See Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 345 (2007) (holding that because an appellant did not include an argument in his questions presented (now assignments of error), the Court would not address it on appeal).

As to the notice issue, appellant's assignment of error was to general sufficiency and did not even hint at the particular way in which the evidence was deficient.

We do note that appellant raised these issues in the trial court.

- 5 -

object sought to be attained, and the legislative purpose in enacting it" and give the statute "a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003).

Further, while "penal statutes are to be construed strictly against the [Commonwealth]" and "cannot be extended by implication, or be made to include cases which are not within the letter and spirit of the statute," Wade v. Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960), "we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein," Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)).

We begin our analysis with a review of the relevant statutes.

Code § 22.1-254, part of the compulsory attendance law, provides in part that parents of children between five and eighteen years old shall "send such child[ren] to a public school . . . ." Subsection (C) provides a mechanism for excusing students who may be absent by reason of religious holidays and sets forth the specific circumstances when the school board may excuse a student from attending school. Thus, Code § 22.1-254 addresses school enrollment and school attendance.

Subsection (H) of Code § 22.1-254, with several exceptions not applicable here, mandates that "[w]ithin one calendar month of the opening of school, each school board shall send to the parents or guardian of each student enrolled in the division a copy of the compulsory school attendance law and the enforcement procedures and policies established by the school board."

Code § 22.1-258 addresses various scenarios, based on the number of absences, when a student fails to report to school on a regularly scheduled school day and there is no indication the

parent is aware of and supports the absence, based on the number of absences. The statute

provides for parent notification, obtaining an explanation of the absences, and a conference

between the parent and school officials after the sixth absence. The statute further states that

upon the next absence, without indication the parent is aware of and supports the student's

absence, school authorities shall enforce the provisions of the statute by either (1) filing a child

in need of supervision complaint under Code § 16.1-228, or (2) instituting proceedings against

the parent under Code § 18.2-371 (contributing to the delinquency of a minor) or under Code

§ 22.1-262 (complaint to court when a parent fails to comply with the law), or both.

Code § 22.1-263 provides that any person violating Code § 22.1-254 or the parental

responsibility provisions of Code § 22.1-279.3 shall be guilty of a Class 3 misdemeanor.[7]

However, a person who knowingly and willfully violates Code § 22.1-254 and that person has

been convicted previously of a Code § 22.1-254 violation shall be guilty of a Class 2

misdemeanor.[8]

Code § 22.1-279.3 sets forth the parental responsibilities under the compulsory

attendance law:

> A. Each parent of a student enrolled in a public school has a duty
> to assist the school in enforcing the standards of student conduct
> and compulsory school attendance in order that education may be
> conducted in an atmosphere free of disruption and threat to persons
> or property, and supportive of individual rights.

The statute also mandates that the school board, within one calendar month of the

opening of the school year, send to the parents (1) notice of the requirements of this section, (2) a

---

[7] The violation for a Class 3 misdemeanor is a fine of not more than $500.

[8] The violation for a Class 2 misdemeanor is confinement in jail for not more than 6 months and a fine of not more than $1,000, either or both.

copy of the school board's standards of student conduct, and (3) a copy of the compulsory school attendance law.

Our analysis requires that we first determine whether Code § 22.1-254 includes tardiness. Appellant argues the word "send" simply means "enroll" and does not include the physical act of transporting the child to school.

Appellant challenges the sufficiency of the evidence, contending the Commonwealth did not prove she knowingly and willfully violated the compulsory attendance law. This argument is premised on a conviction for a Class 2 misdemeanor. However, it is clear from the record that appellant was convicted of a Class 3 misdemeanor, which does not require a knowing and willful violation. Furthermore, in her brief, appellant recited that the warrant was amended to a Class 3 misdemeanor.

While the amended warrant charged a knowing and willful violation, appellant's motion to dismiss recited that she was charged with a Class 3 misdemeanor. At the hearing on the motion to dismiss, the Commonwealth expressed confusion about whether appellant was charged with a Class 2 or 3 misdemeanor and stated that either was acceptable, as the Commonwealth was not seeking jail time. The court stated that it was proceeding with Class 3 misdemeanors. Appellant's trial counsel agreed. The parties argued the charges as Class 3 misdemeanors.

After the court denied appellant's motion to dismiss, the court immediately began the trial and announced that it was proceeding with a Class 3 misdemeanor. The court noted that the language in the warrants was inconsistent with the nature of the charge which was a Class 3 misdemeanor. The Commonwealth moved to amend the language. Appellant objected, but she declined the court's offer of a continuance. Appellant was then arraigned on and pled not guilty to the Class 3 misdemeanors.

While we note that the warrants were not amended to delete the words "knowing and willful," it is clear that both parties and the trial court agree to proceed with a Class 3 misdemeanor. Appellant cannot agree to proceed as a Class 3 misdemeanor and now challenge her convictions based on a Class 2 misdemeanor conviction.

"Under settled principles, a criminal defendant cannot 'approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong.'" Alford v. Commonwealth, 56 Va. App. 706, 709, 696 S.E.2d 266, 267 (2010) (quoting Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009)).

In her assignment of error, appellant contends that Code § 22.1-254 does not prohibit a parent from "occasionally" allowing her child to be tardy. Appellant's characterization of her children's tardiness as occasional is belied by the evidence. As discussed above, the children were tardy 63% of the Thursdays between September 15 and January 19.[9] This is hardly occasional. Appellant argues a parent should not be held criminally liable for a single incident of tardiness. We do not disagree with this statement. However, the statutory scheme imposes no criminal penalty until the seventh event.

She also contends that Code § 22.1-254 does not allow parents discretion to allow their children to be tardy when necessary. Again, this argument is premised on a misreading of the statutory scheme. Under Code § 22.1-258, only after *six* absences must the parent participate in a conference with school personnel. Upon the *seventh* absence, the parent is subject to criminal sanctions. Further, appellant ignores the fact that tardiness can be excused by school personnel.

---

[9] While the 63% represents the percentage of tardiness from September 2011 to January 2012, appellant was only convicted from tardiness occurring after December 1, 2011. Nevertheless, the entire period is relevant to show a pattern of conduct.

The evidence here indicates appellant made no effort to contact the school prior to the tardiness to explain the reasons for the tardiness.

Appellant argues the appropriate interpretation of "send" in Code § 22.1-254 is a requirement that a parent simply must "enroll" the child in school. She maintains that once she enrolled her children in school, she satisfied the mandate of Code § 22.1-254. She correctly notes that the word "tardy" does not appear in the compulsory attendance law.

Appellant cites two definitions of "send:"

1. "To cause, permit or enable to go," which she interprets to mean "enroll."

2. "To cause to be conveyed or transported to a destination."

Appellant relies on the first definition. However, in interpreting a statute, "[w]e consider all relevant provisions of a statute and do not isolate particular words or phrases." Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002). "[A] statute should never be construed so that it leads to absurd results." Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992).

The clear intent of the compulsory attendance law is to ensure that children attend school in order to receive the benefits of an education. Common sense therefore dictates that children should be in school from the beginning of the school day until dismissal.

As stated earlier, Code § 22.1-254 is not limited to mandatory enrollment. It also delineates circumstances where children may be temporarily excused from attendance, as well as long-term non-attendance.

The trial court partially relied on an Attorney General's opinion, 300 Va. AG 91, to support its finding that Code § 22.1-254 encompasses tardiness, early departures, and absenteeism. Although the Attorney General's opinion is "'entitled to due consideration, [it is] not binding on this Court.'" Twietmeyer v. City of Hampton, 255 Va. 387, 393, 497 S.E.2d 858,

861 (1998) (quoting City of Virginia Beach v. Virginia Restaurant Assoc., 231 Va. 130, 135, 341 S.E.2d 198, 201 (1986)). However, we find that the Attorney General's opinion is consistent with a correct and practical interpretation of the statutory scheme.

Article I, Chapter 14, the Compulsory School Attendance statutes, begins with Code § 22.1-254. That statute creates the obligation of parents to enroll their children in school and to ensure the children attend school each day while school is in session. Furthermore, the Supreme Court of Virginia has already addressed the scope of Code § 22.1-254 in Johnson v. Prince William Cty. School Bd., 241 Va. 383, 404 S.E.2d 209 (1991), holding that "Code § 22.1-254 provides that all children between the ages of five and seventeen shall attend school."[10] Id. at 385, 404 S.E.2d at 210. Attend is defined as "to be present at." www.dictionary.com (last visited Sept. 20, 2013).

Code § 22.1-258 is an enforcement statute, addressing the appointment and function of attendance officers, notification requirements when a student fails to report to school, and ultimately court involvement. Code § 22.1-258 creates the parent's responsibility to assume compliance with the Act.

While neither Code § 22.1-258, nor any other statute in the compulsory attendance law, mentions tardiness, it is clear that tardiness is contemplated within the term "absent" or "fails to report to school." Tardiness is a partial absence from school. "Absent" is defined in The American Heritage Dictionary 69 (2d College ed. 1985), as "missing or not present." Thus, when a student arrives at school late, he is not present between the time school begins and the time he arrives and thus does not benefit from the educational experience.

_____

[10] Effective July 1, 1990, Code § 22.1-254 was amended to require children to attend school until their eighteenth birthday. Acts 1989, ch. 515.

Appellant next contends, as she did at trial, that she was not given notice pursuant to Code § 22.1-254(H) of the compulsory school attendance law and the enforcement procedures and policies established by the school board. However, this argument is made in the context of whether she knowingly and willfully violated the statute. Because we have already concluded that "knowing" and "willful" are not elements of the Class 3 misdemeanors under which appellant was convicted, we find that whether or not notice was given under subsection (H) is not relevant to this analysis.

In her closing at trial, appellant made the same argument she makes on appeal. The Commonwealth's attorney argued notice is not an element of the offense. Alternatively, the Commonwealth argued if the trial court believed notice was required, appellant had notice as of the November 3, 2011 letter. The Commonwealth also argued evidence supported a finding of knowing and willful behavior. The trial court found that notice was sent pursuant to the statute.

## CONCLUSION

Appellant did not preserve her argument regarding the constitutionality of Code § 22.1-254. Thus, we do not address it on appeal. Because appellant was convicted and sentenced pursuant to Class 3 misdemeanors, the Commonwealth was not required to prove that she knowingly and willfully violated the compulsory attendance law, nor was the Commonwealth required to prove notice. Appellant was properly convicted of violating Code § 22.1-254.

<u>Affirmed.</u>

Petty, J., dissenting.

Blake was convicted for violating Code § 22.1-254(A). That statute provides, in pertinent part,

> Except as otherwise provided in this article, every parent, guardian, or other person in the Commonwealth having control or charge of any child who will have reached the fifth birthday on or before September 30 of any school year and who has not passed the eighteenth birthday shall, during the period of each year the public schools are in session and for the same number of days and hours per day as the public schools, send such child to a public school or to a private, denominational, or parochial school or have such child taught by a tutor or teacher of qualifications prescribed by the Board of Education and approved by the division superintendent, or provide for home instruction of such child as described in § 22.1-254.1.

In short, this case hinges on what it means to "send" a child to school "during the period of each year the public schools are in session and for the same number of days and hours per day as the public schools." Code § 22.1-254(A). Blake argues that "send" is not defined in this code section and does not include tardiness. I agree. Thus, I respectfully dissent.

"'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Tazewell County Sch. Bd. v. Brown, 267 Va. 150, 162, 591 S.E.2d 671, 676-77 (2004) (quoting City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995)). If multiple sections of a statute are inconsistent or ambiguous when read together, then we "are required to harmonize any ambiguity or inconsistency in the statute to give effect to the General Assembly's intent without usurping 'the legislature's right to write statutes.'" Parker v. Warren, 273 Va. 20, 24, 639 S.E.2d 179, 181 (2007) (quoting Boynton v. Kilgore, 271 Va. 220, 229-30, 623 S.E.2d 922, 927 (2006)). Accordingly, we must give "'every word and every part of the statute, if possible, its due effect and meaning, and to the words used their ordinary and popular meaning, unless it plainly appears that they were used in

- 13 -

some other sense.'" Epps v. Commonwealth, 47 Va. App. 687, 714, 626 S.E.2d 912, 924 (2006) (en banc) (quoting Posey v. Commonwealth, 123 Va. 551, 553, 96 S.E. 771, 771 (1918)).

It is clear to me that Code § 22.1-254(A) was enacted to require parents to enroll their children in school. The enumeration of acceptable school choices, and particularly the option for home schooling, establish in my mind that the General Assembly intended the term "send" to mean enroll.

Further, when considering the plain meaning of a word, we look to the context in which it is used. Trustees of the Christ and St. Luke's Episcopal Church v. Board of Zoning Appeals, 273 Va. 375, 383, 641 S.E.2d 104, 108 (2007). The term "send" when used in the context of education means "to dispatch to a specified destination for a course or term (send a son to college)" or "to permit (a person) to attend a college, school or other educational institution by paying all or part of the expenses involved." Webster's Third New International Dictionary 2065 (1981). Thus, I disagree with the majority's conclusion that the term imposes an "obligation [on] parents . . . to ensure the children attend school each day."

Finally, to construe the term "send" to mean daily attendance would be redundant. Code § 22.1-279.3 imposes on parents a "duty to assist the school in enforcing . . . compulsory school attendance." And "[a]ny person violating the provisions of . . . the parental responsibility provisions relating to compulsory school attendance included in § 22.1-279.3, shall be guilty of a Class 3 misdemeanor." Code § 22.1-263. These statutes would be unnecessary if the majority's interpretation of Code § 22.1-254 were correct.

Accordingly, I believe that Code § 22.1-254(A) only requires that parents enroll their children in school. Because it is undisputed that Blake's children were enrolled in public school,

I would conclude that the Commonwealth has failed to prove a violation of Code § 22.1-254;

therefore, I would dismiss the warrants.[11]

---

[11] Because I conclude that Code § 22.1-254 does not apply to school attendance violations, I would not address whether a parent's failure to ensure a child is present on time is a crime.